IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                      :          CASE NO. 11-04414 (ESL)
                                                            :
SWISS CHALET, INC.                                          :
            Debtor                                          :          CHAPTER 11
                                                            :
SWISS CHALET, INC.                                          :
                                                            :
        Plaintiff/Debtor                                    :
                                                            :          ADVERSARY NO. 11-00247 (ESL)
            vs.                                             :
                                                            :
JOSEPH P. MCCLOSKEY DIAZ,                                   :
LOURDES VAZQUEZ HUYKE AND                                   :
THEIR CONJUGAL PARTNERSHIP                                  :
                                                            :
        Defendants                                          :

OPINION AND ORDER

This adversary proceeding is before this court upon Swiss Chalet Inc.'s (the "Plaintiff", "Debtor" or "SCI") *Motion for Summary Judgment* (Docket No. 19) and the *Opposition* (Docket No. 30) filed by defendants Joseph P. McCloseky Diaz, Lourdes Vazquez Huyke and their conjugal partnership (the "Defendants" or the "McCloskeys"). SCI seeks the recovery of monies and property owed to the bankruptcy estate by the Defendants. The McCloskeys oppose alleging that: (a) pursuant to the approved *Plan of Reorganization*[1], all claims against SCI's guarantors, such as themselves, were fully discharged; (b) SCI is precluded from asserting its collection of monies claim against the Defendants; (c) SCI lacks standing to pursue the causes of action in the instant *Complaint* because that power was vested upon CPG/GS PR NPL. LLC ("CPG") pursuant to the *Plan of Reorganization*; and (d) SCI is judicially estopped from asserting its collection of monies claims because it affirmatively represented in its *Disclosure Statement*[2] that the amounts allegedly owed by the Defendants were uncollectible. For the reasons stated below, the Plaintiff's *Motion for Summary Judgment* (Docket No. 19) is hereby granted.

Procedural Background

On May 27, 2011, the Plaintiff filed a Chapter 11 voluntary petition and has since been

---

[1] The Plaintiff filed its *Plan of Reorganization* on December 5, 2011 (Lead Case Docket No. 136).

[2] The Plaintiff also filed its *Disclosure Statement* on December 5, 2011 (Lead Case Docket No. 135).

managing its affairs and operating its business as a debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code. See Lead Case Docket No. 1.

On November 17, 2011, the Plaintiff filed the above captioned *Complaint* seeking the recovery of $3,169,033.00, plus interest at 12% *per annum* from September 30, 2011, until full payment of the amount due, or in the alternative, the sum of $2,442,967.00, plus interest at 12% *per annum* from September 30, 2011, until full payment of the amount due, if Apartment 1704 S of the Gallery Plaza Condominium ("Gallery Plaza") is surrendered with its contents by the Defendants to the bankruptcy estate. See Docket No. 1.

On January 31, 2012, the Defendants filed their *Answer to the Complaint*[3] (Docket No. 12). Their main affirmative defense was that the amounts claimed by the Plaintiff are not yet due because the suspensive condition to the obligation (*i.e.* FirstBank's notice of default) has not been met.

On February 2, 2012, the court entered an *Order Confirming Joint Plan of Reorganization* (the "*Confirmation Order*", Lead Case Docket No. 226).

On May 24, 2012, the Plaintiff filedApril 1, 2013 a *Motion for Summary Judgment* (Docket No. 19), with its *Statement of Uncontested Material Facts* (Docket No. 19-1) and *Memorandum of Law* (Docket No. 20), for the recovery of certain amounts advanced by the Plaintiff to the Defendants and the purchase price and value of certain improvements pertaining to Apartment 1704 S at the Gallery Plaza Condominium granted by the Plaintiff to the Defendants.

After a series of extensions of time requested by the Defendants and granted by the court (Docket Nos. 21, 23, 24, 26 and 27), on August 1, 2012, the Defendants filed their *Opposing Statement of Material Facts* (Docket No. 29) and *Opposition to Motion for Summary Judgment* (the "*Opposition*", Docket No. 30)[4]. They contend that pursuant to Section 9.1 of the *Plan of Reorganization*, all claims against the Plaintiff's guarantors, including the Defendants, were discharged. They also assert that the claim related to Apartment 1704 S must be dismissed because they surrendered it and that the amounts purportedly advanced to Defendants are not due and

---

[3] Defendants' *Answer to the Complaint* was filed *pro se*.

[4] Defendants' *Opposition* was filed through counsel, attorney Alexis Fuentes-Hernandez.

payable. Alternatively, they contend *in arguendo* that even if the alleged debts were not discharged, the *Confirmation Order* vested on CPG all causes of actions pertaining to the Encumbered Property (as defined in the *Plan of Reorganization*) and therefore only CPG has standing to pursue the instant claim, not the Plaintiff. Furthermore, the Defendants also sustain that SCI is judicially estopped from prosecuting the instant case because in the *Disclosure Statement*, the Debtor made representations that the amounts owed by Defendants were "uncollectible". In addition, the Defendants claim that the amounts SCI seeks to collect are not due and payable under Puerto Rico law and Section 4(B) of the *Recognition of Debt, Ratification, Fourth Guaranteed Personal Loan Agreement with Future Benefits and Shares of SCI and GP West and Cession* (the "*Recognition*").

On September 19, 2012, the Plaintiff filed a *Reply* to the Defendants' *Opposition* (Docket No. 31). SCI avers that the causes of action in the *Complaint* do not have any relationship with the discharge provision in the *Plan of Reorganization* nor were they discharged by its confirmation. It further contends that Defendants' status as shareholders of the Plaintiff, and that of Mr. McCloskey as Plaintiff's former industrial partner, do not warrant them a license not to pay what they owe regardless of the fact that they could have been Plaintiff's guarantors to third parties. The Plaintiff also argues that Section 9.1 of the *Plan of Reorganization* refers to claims by third parties against the Plaintiff and its guarantors and not those relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the effective date. As to the Defendants' allegations that the Plaintiff's claims are precluded because the confirmation order divested the Plaintiff of such claims and that Plaintiff is estopped from asserting them after confirmation of the *Plan of Reorganization* in view of its alleged failure to disclose them, Plaintiff asserts that the *Disclosure Statement* (Lead Case Docket No. 135, pp. 51-52) expressly disclosed the claims against Defendants "could be uncollectible" and that the divested claims have nothing to do with Plaintiff's claims and causes of actions as to monies owed by the Defendants.

On October 23, 2012, the Defendants filed a *Sur-reply* to Plaintiff's *Reply* (Docket No. 35) alleging that SCI has not identified a single provision of the *Plan of Reorganization* or the order confirming it that specifically limits the extent of the discharge as it proposes and that to the contrary, the clear terms of the confirmed *Plan* are unambiguous and clearly set forth a discharge

of all claims, which presently constitutes *res judicata.*  Thus, the McCloskeys reiterate that all claims, including those against SCI's guarantors such as themselves, including the one disputed in the instant adversary proceeding, were and currently stand fully discharged.

Material Uncontested Facts

From the totality of the record, the following material facts are uncontested pursuant to Fed. R. Civ. P. 52, applicable to these proceedings through Fed. R. Bankr. P. 7052:

1.      Defendants are shareholders of SCI.  Co-defendant Joseph P. McCloskey was SCI's industrial partner.

2.      On October 20, 2009, through a document titled in Spanish *"Reconocimiento de Deuda, Ratificación, Cuarto Acuerdo de Préstamo Personal Garantizado con Beneficios Futuros y Acciones de Swiss Chalet, Inc. y G.P. West, Inc. y Cesión"*[5] (the "*Recognition*"), the McCloskeys recognized that by the payment of $1,000.00 they acquired 33.333% of SCI's issued and outstanding common shares, later reduced to 31.333% as a result of the inclusion of Mr. Arnold Benus ("Benus") as SCI's shareholder.  Admitted in ¶ 2 of the *Answer to the Complaint.*  See Docket Nos. 1 and 12.

3.      As of September 30, 2011, the McCloskeys owed SCI $3,187,356.06, which includes not only the cash advances made and documented in the aforementioned documents[6], but also the agreed to, and not paid for, the purchase price of Apartment 1704 S at Gallery Plaza Condominium, the improvements thereto, and the furniture and fixtures purchased therefor, all paid for by SCI. Admitted in ¶ 4 of the *Answer to the Complaint.*  Also see Docket Nos. 1 and 12.

4.      On July 4, 2012, the McCloskeys surrendered Apartment 1704 S at Gallery Plaza Condominium to CPG, although they still occupy it through a lease agreement executed by and

---

[5] A certified translation of that document was filed at Docket No. 20-2.

[6] The detailed breakdown of the principal amount is as follows: $2,252,620.00 for advances by SCI to the Defendants; $128,123.00 arising from a discount on an apartment purchased by co-defendant's Joseph McCloskey's brother, Mr. Robert McCloskey, and with which discount the Defendants paid a debt thereto; $224,171.00 for improvements to Apartment 1704S paid for by SCI; $501,900.00 consisting of the purchase price of said apartment and not paid by defendants to SCI; $80,533.00 for the use and occupancy of Apartment 1704S from June 30, 2008 to September 30, 2011, and additional charges for the use and occupancy of Apartment 1704S, if it was not purchased by defendants, up to the Effective Date of SCI's confirmed *Plan of Reorganization*, as supplemented, that is February 21, 2012, when SCI's residential unit at the Gallery Plaza Condominium were to be turned over to CPG or its assignee. See Docket No. 31, ¶ 1, pp. 1-2.

between CPG as owner and lessor and the Defendants as lessees.  The principal of the debt with SCI therefore was reduced to $2,442,967.00, crediting the purchase price of the apartment, as well as the cost of the improvements thereto and the value of the furniture located therein.  See ¶¶ 1 and 6 of the McCloskeys' *Opposition*, Docket No. 29, pp. 3-4, and its supporting documents, and the admission in ¶ 5 of their *Answer to the Complaint* (Docket Nos. 1 and 12).

5.    SCI and GP West, Inc. have no benefits, tax credits, corporate dividends or any other concepts for distribution to shareholders to set-off any of the amounts owed by the Defendants to SCI.  Admitted in ¶ 6 of the *Answer to the Complaint.*  See Docket Nos. 1 and 12.

6.    On February 16, 2011, FirstBank of Puerto Rico sold and assigned its rights, title and interests under SCI's loans to CPG.  See ¶ 6 of the Defendants' affirmative defenses in their *Answer to the Complaint* and the documents attached thereto, Docket No. 12, p. 3, ¶ 6, and p. 5.

Legal Analysis and Discussion

*(A)    Jurisdiction*

Pursuant to 28 U.S.C. § 157(b)(1), this court is authorized to hear and determine all core proceedings arising under the Bankruptcy Code.  The instant case is a turnover proceeding of property that is claimed to belong to the bankruptcy estate under Sections 541 and 542 of the Bankruptcy Code, which constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(E).  The Defendants do not question this court's jurisdiction.

*(B)    Standard for Summary Judgment*

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P. 56 applicable to adversary proceedings.  Fed. R. Civ. P. 56 provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Bankr. P. 7056.  Also see In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  10A Wright, Miller & Kane, Federal Practice and Procedure: 3d §

5

2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) cert. denied 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Also see López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-1561 (D.C. Cir. 1990) cert. denied 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition,

6

the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court is required to view the pleadings in their entirety when passing a request for summary judgment. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 at 368. To do so, it may consider affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether or not any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. Id., § 2721 at 365-366.

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane Federal Practice & Procedure: Civil 3d § 2737. The summary judgment standard now appears in subsection (a) of Fed. R. Civ. P. 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. See Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782, n.4 (1st Cir. 2011).

In this case, the uncontested facts are supported by the Defendants' admissions and undisputed evidence in the record. Thus, summary judgment is warranted.

*(C)      Was the Defendants' Debt with the SCI discharged?*

There is no dispute that after the McCloskeys surrendered Apartment 1704 S at Gallery Plaza Condominium to CPG, their principal debt with SCI, crediting the purchase price of the apartment, as well as the cost of the improvements thereto and the value of the furniture located therein, was

7

reduced to $2,442,967.00. Compare Docket No. 20, p. 12, with Docket No. 29, p. 4, ¶ 1.

The Defendants move this court to only look at Section 9.1 of the *Plan of Reorganization* to determine that their debt with SCI has been discharged and that therefore the instant adversary proceeding must be dismissed (Docket No. 30, pp. 4-5). Section 9.1 reads as follows:

> Discharge. Except as otherwise provided in the Plan [of Reorganization] or in the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors, Debtors' Guarantors, the Post-Confirmation Debtors, the Encumbered Property, CPG and the CPG Transferee, or any of their assets or properties and, regardless of whether any property is abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such claims, upon the Effective Date, the Debtors and the CPG Transferee, and each of them, will be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502 of the Bankruptcy Code. This is so whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (B) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan.
>
> As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons are precluded from asserting against the Debtors, Debtors' Guarantors, the Post-Confirmation Debtors, the Encumbered Property, CPG, or the CPG Transferee, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or Equity Interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination of the discharge of all such Claims and other debts and liabilities against the Debtor, Debtors' Guarantors, the Post-Confirmation Debtor, the Encumbered Property, CPG, and the CPG Transferee, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors, Debtors' Guarantors, the Post-Confirmation Debtors, the Encumbered Property, CPG, or the CPG Transferee at any time, to the extent that such judgment relates to a discharged Claim. (Lead Case Docket No. 226-1, pp. 51-52.)

"It is well established that a chapter 11 plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed." Miller v. United States (In re Miller), 253 B.R. 455, 458 (Bankr. N.D. Cal. 2000), citing Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993); In re Bartleson, 253 B.R. 75, 78-79 (B.A.P. 9th Cir. 2000) ("a chapter 11 plan should generally be interpreted as if it were a contract"); In re Affordable Housing Development Corporation, 175 B.R. 324, 329 (B.A.P. 9th Cir. 1994). Also see 11 U.S.C. § 1141; Nancy C. Dreher,

Joan N. Feeny and Michael J. Stepan, <u>Bankruptcy Law Manual</u>, Volume 2 § 5:11:67 (2012-2), p. 804; <u>Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)</u>, 456 F.3d 668, 676 (6th Cir. 2006) ("In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors."); <u>Miller v. United States</u>, 363 F.3d 999, 1004 (9th Cir. 2004) ("A Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts.")

Section 11.7 and Article I(A) of the *Plan of Reorganization* establish that except to the extent the Bankruptcy Code or Rules apply, Puerto Rico law will govern the rights and obligations arising therefrom. <u>See</u> Lead Case Docket No. 226-1, pp. 5 and 59. Consequently, Puerto Rico's general rules of contract interpretation are controlling in the instant case.

Articles 1234, 1236 and 1237 of Puerto Rico's Civil Code establish as follows:

> In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract. 31 L.P.R.A § 3472.

> If any stipulation of a contract should admit of different meanings, it should be understood in the sense most suitable to give it effect. 31 L.P.R.A. § 3474.

> The stipulations of a contract should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together. 31 L.P.R.A. § 3475.

<u>Also see</u> <u>BPPR v. Sucn. Talavera</u>, 174 D.P.R. 686, 708-709 (2008) (applying a "totality of the contract" analysis); <u>Guadalupe Solis v. Gonzalez Durieux</u>, 172 D.P.R. 676, 685 (2007); <u>Caballero v. Kogan</u>, 73 D.P.R. 666, 674 (1952); <u>Ulpiano Casal, Inc. v. Totty Mfg. Corp.</u>, 90 P.R.R. 719, 724 (1964) ("[a]s in the case of a statute, the various terms of a contract are read together and harmonized to determine the true intent of the parties").

The court will now proceed to review the *Plan of Reorganization* as a whole in light of the circumstances leading to it as they appear from the record.

The instant adversary proceeding was filed on November 17, 2011 (Docket No. 1), that is, prior to the filing of the *Plan of Reorganization* and the *Disclosure Statement* on December 5, 2011 (Lead Case Docket Nos. 135 and 136). In Section 7.2(B)(c) of the *Disclosure Statement*, SCI

included as its account receivable and liquidated debt the sum of $3,187,356.00 owed by the Defendants[7] (Lead Case Docket No. 135, pp. 51-52), which is the debt SCI seeks to collect in the instant proceeding. Since then, SCI preserved its intention to collect that debt and have those funds turned over to the bankruptcy estate. See 31 L.P.R.A. § 3472 and Ramirez, Segal & Latimer v. Rojo Rigual, 23 P.R. Off. Trans. 156, 164, 123 D.P.R. 161, 172 (1989) (prior events to the contract must be considered to interpret it). It then follows that Section 10(d) of the *Plan of Reorganization* provides for the retention of jurisdiction by this court to "determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the confirmation date" (Lead Case Docket No. 226-1, pp. 54-55).

Section 5.2 of the *Plan of Reorganization* provides the extent of the discharge as follows:

Discharge of Indebtedness- All indebtedness due and owing by the Debtors and Debtors' Guarantors to CPG with respect to the Class 2 (a) and Class (2(b) Secured Claims shall be discharged. In addition, all Indebtedness due and owing by the Debtors and Debtors' Guarantors to CPG with respect to the unsecured Class 4 deficiency claim shall be discharged. Further, to the extent provided in this Plan, all notes, instruments, agreements and other documents reflecting such debt of the Debtors to CPG will be deemed discharged, and all obligations of the Debtors and Debtors' Guarantors under such notes, instruments, agreements and other documents or in any way related thereto will be discharged in exchange for the treatment afforded to CPG in the Plan; provided, however, that Liens and the corresponding mortgage notes against the Encumbered Property are preserved as provided in the Plan. (Lead Case Docket No. 226-1, p. 35.)

Section 9.1 is expressly conditioned to its other more specific sections and only operates when it is not in direct conflict with other provisions of the *Plan of Reorganization*. In other words, Section 9.1 cannot be read separately from the other provisions of the *Plan of Reorganization*, in particular Section 5.2, which provides a more specific context to the discharge. Section 5.2 does not discharge the Defendants from pre-petition debts with SCI.

An integral reading of the *Plan of Reorganization* also reveals that its main purpose was to

---

[7] SCI advised that Defendants' debt "could be uncollectible" (Lead Case Docket No. 135, p. 52). The court is cognizant that such disclosure was made under 11 U.S.C. § 1125, which requires a chapter 11 debtor to provide adequate information of its assets and accounts receivables. A more thorough analysis of the foregoing is provided in the discussion on whether SCI is judicially estopped from collecting this debt contained in section (E) of this *Opinion and Order*.

procure a restructuring transaction[8] with CPG, SCI's main creditor.  In consideration of that restructuring transaction, SCI's shareholders, including the Defendants, had to remain personal guarantors of the restructured loan for $2,000,000.00 each and provide an additional supplemental "bad boy" guaranty for the entire indebtedness to CPG in case of fraud and other intentional acts. See Lead Case Docket No.  226-1, pp. 25-27.  Also see 31 L.P.R.A. § 3474.

The court cannot find any consideration whatsoever in the *Plan of Reorganization* whereby discharging the Defendants' debt would benefit the bankruptcy estate, the Debtor or its creditors. The Defendants have not alleged or proposed any such consideration.  Therefore, the court finds that contrary to the Defendants' contention, the *Plan of Reorganization* read as a whole does not discharge them from their debts with SCI.

Furthermore, to grant the Defendants' discharge allegation would imply a non-debtor third-party discharge.  To that extent, a Chapter 11 plan of reorganization "may not preclude lawsuits against a non-debtor shareholder or guarantor, or some other non-debtor third party, even if the plan so provides and is confirmed without any objection by the affected creditor."  Thomas J. Salerno, Jordan A. Kroop, Bankruptcy Litigation & Practice: A Practitioner's Guide ¶ 2nd Volume (4th ed. 2008).

Therefore the court finds that the Defendants' debt with the Plaintiff is not discharged under the *Plan of Reorganization* or the *Confirmation Order*.

*(D)   Does SCI have standing to prosecute the instant adversary proceeding?*

The Defendants claim that SCI has no standing to prosecute the instant adversary proceeding because all causes of actions pertaining to the Encumbered Property[9] were vested on CPG (Docket

---

[8] "Restructuring transaction" was defined in Article I(A) of the *Plan of Reorganization* as the "payment, satisfaction and cancellation of the Debtors' indebtedness pursuant to the Plan, including the transfer of the Encumbered SCI Condominium Units, the Encumbered GPW Condominium Units, and the De Diego Property, to CPG or the CPG Transferee pursuant to the terms of the Plan" (Lead Case Docket No. 226-1, p. 5).

[9] The "Encumbered Property" was defined in the *Plan of Reorganization* as "all Property subject to the Lien of CPG under the Loan Documents" (Lead Case Docket No. 226-1, p. 11).  The "Loan Documents" refer to "various loan and security agreements with Debtors and others referred to in the Cash Collateral Stipulation ¶ 8 and those shown in the Exhibits to the ¶¶ 13-90 of the *Verified Complaint* in K AC 2011-0552 (803), Puerto Rico Court of First Instance, San Juan Section" (Lead Case Docket No. 226-1, p. 14).  Also see Lead Case Docket Nos. 11 and 24.

11

No. 30, p. 6).

Section 5.17 of the *Plan of Reorganization* provides as follows:

Preservation of Rights of Action and Claim Objections- Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Post-Confirmation Debtors[10], shall have all rights to commence and pursue, as appropriate, any and all causes of action, except the Contractor Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Bankruptcy Cases . Furthermore, CPG and the Post-Confirmation Debtors, shall have the right to object to the allowance of any Claim on any ground, including pursuant to Section 502(d) of the Bankruptcy Code. (Lead Case Docket No. 226-1, pp. 44-45.)

In light of that provision, and the fact that the instant adversary proceeding was filed prior to filing of the *Plan of Reorganization* and the entry of the order confirming it (Lead Case Docket Nos. 226 and 226-1), the court finds that SCI has standing to prosecute the instant claim.

*(E)     Is SCI judicially estopped from asserting the instant claims?*

The Defendants allege that SCI is "judicially estopped from asserting its collection of monies claims against [them] ... because in its disclosure statement [it] affirmatively represented that the amounts purportedly owed by Defendants were uncollectible" and that therefore "SCI should be estopped from pursuing the claims asserted" against them (Docket No. 30, pp. 6-7). The Defendants cite De Leon v. Comcar Indus., 321 F.3d 1289 (11th Cir. 2003), in support of their estoppel argument.

Section 7.2(B)(c) of SCI's *Disclosure Statement* provides that:

Debtor's accounts Receivable are Liquidated Debts- As of October 31, 2011, SCI's accounts receivable totaled $7,669,329.00, including accounts receivable from guests, corporate customers, Hilton's Advertising Refund Program, and other accounts receivables from Insiders for $3,199,498.00, of which $3,187,356.00 due by Mr. and Mrs. Joseph P. McCloskey, **could be uncollectible**. (Lead Case Docket No. 135, pp. 51-52, emphasis added.)

Advising creditors under 11 U.S.C. § 1125 that a certain debt "could be uncollectible" does not translate to a debtor representing that the debt is ultimately "uncollectible", thus becoming judicially estopped from collecting it.    The court declines to accept the Defendants'

---

[10] The "Post-Confirmation Debtors" includes SCI. See the *Plan of Reorganization*, Lead Case Docket No. 226-1, pp. 10 and 16 (definitions for "Debtors" and "Post-Confirmation Debtors").

misrepresentation of Section 7.2(B)(c) of the *Disclosure Statement* and rules that SCI is not judicially estopped from asserting the instant adversary proceeding[11].

In addition, the facts in <u>De Leon v. Comcar Indus.</u>, cited by the Defendants, are inapposite to the instant one. In <u>DeLeon</u>, the plaintiff filed discrimination and retaliation charges against his former employer at the Equal Employment Opportunity Commission ("EEOC") and subsequently filed a voluntary Chapter 13 bankruptcy petition. He later obtained from the EEOC a right-to-sue letter and proceeded to file a discrimination suit without amending his bankruptcy schedules to disclose it as a potential asset. Under those circumstances, the Court of Appeals for the Eleventh Circuit ruled that the plaintiff was estopped from prosecuting those causes of action because he "certainly knew about his claim and possessed a motive to conceal it because his amount of repayment would be less". <u>De Leon</u>, 321 F. 3d at 1292. The Court of Appeals could "infer from the record his intent to make a mockery of the judicial system." <u>Id.</u> at 1292 (citations omitted).

*(G)     Are the amounts claimed by SCI due and payable?*

SCI sustains that "all debts of the McCloskeys to SCI became immediately due with CPG's ... notice of default, forwarded to SCI's schedules on or about May 3, 2011, pursuant to SCI's and GP West's loan agreements with FirstBank" (Docket No. 20, p. 5, ¶ 16).

The McCloseys argue that Section 4(B) of the *Recognition* provides for the acceleration of monies advanced under said document "in the event that SCI defaulted on its obligations towards FirstBank (predecessor for CPG) and SCI received a notice of default" (Docket No. 30, p. 8). They further contend that "the amounts that [SCI] attempts to collect in this case were not advanced to Defendants under the [*Recognition*] and were purportedly disbursed years prior to the date of the [*Recognition*]" (Docket No. 30, p. 8). Hence, they conclude that the amounts SCI attempts to collect in this case are not subject to the aforementioned acceleration and therefore are not yet due and

---

[11] The court finds that the Defendants misrepresented to this court the extent of Section 7.2(B)(c) of the *Disclosure Statement* (Lead Case Docket No. 135, pp. 51-52) by omitting essential parts of it to impute upon Debtor a willful intention to mislead creditors. The Defendants further alleged, based on that faulty incomplete citation, that the Debtor is "judicially estopped from asserting its collection of monies claims against [them] ... because in its disclosure statement [it] affirmatively represented that the amounts purportedly owed by Defendants were uncollectible" (Docket No. 30, pp. 6-7), when in reality, what the Debtor actually disclosed was that the Defendants' debt "could be uncollectible" (Lead Case Docket No. 135, pp. 51-52).

payable.  No evidence was attached or proffered by the Defendants in that regard.

In reply to those allegations, SCI argues that Section 4(A) of the *Recognition* provides that the amounts owed by the Defendants are due on demand and that Section 4B provides for the acceleration of the amounts owed by the Defendants in the event, as it happened, that SCI defaulted in its obligations to FirstBank, and that Firsbank, CPG's predecessor, served SCI with a notice of default thereunder (Docket No. 31, p. 11).  The Defendants did not address or rebut these arguments in their *Surreply* (Docket No. 35).

Sections 4(A) and (B) of the *Recognition* state as follows:

The McCloskeys now agree to and se [*sic*] ratify that:

(A) The monies owed by the McCloskeys for payments in advance and credits referred to in Article Three and any other current or future McCloskey obligation to Swiss Chalet, Inc. and/or GP West, Inc., together with accumulated interests, must be paid by the McCloskeys to Swiss Chalet, Inc. and GP West, Inc. upon demand.  Swiss Chalet, Inc. and GP West, Inc. may discount all or any amount of money owed by the McCloskeys under this document of the monies that are at any time the responsibility of Joseph Patrick McCloskey-Diaz and/or the McCloskeys in the distribution of benefits, tax credits [etc.] ...

(B) Whenever there is a failure to comply by Swiss Chalet, Inc. and/or GP West, Inc. under the loan contracts with FirstBank and a default declaration, Swiss Chalet, Inc. and GP West, Inc. must be paid immediately by the McCloskeys for an amount of money paid to them in advance and any loan that they may have received from Swiss Chalet, Inc. under this agreement together with any interest, understanding that before such an event all of their debts to Swiss Chalet, Inc. and/or GP West, Inc. must be immediately liquidated, expired and demandable for all of them for any purpose under the law and all additional disbursements (if any) must cease.  Docket No. 20-2, pp. 5-6.

The court notes that the McCloskeys' initial contention was that pursuant to the *Recognition*, "the only possible event of default which could trigger an immediate repayment obligation by the McCloskeys" was the "filing of a notice of default by FirstBank stating that SCI was in default of its obligations under the FirstBank loan agreements" and that the amounts claimed in this proceeding were not due and payable because FirstBank had not sent them a notice of default, but rather a notice dated February 16, 2011 stating that FirstBank had assigned to CPG the SCI and GPW loans.  See the McCloskeys' affirmative defenses ¶¶ 5-6 in their *Answer to the Complaint* (Docket No. 12, pp. 3 and 5).  It was not until their *Opposition* that they claimed for the first time that the amounts that SCI attempts to collect in this case were not advanced to them under the *Recognition* and were disbursed years before, without submitting or proffering any evidence whatsoever.

14

The court agrees with the Defendants' initial analysis of the controversy in their *Answer to the Complaint*, to wit, that the notice of a default by FirsBank would trigger an immediate repayment obligation by the McCloskeys pursuant to Sections 4(A) and (B) of the *Recognition*.  In the instant case, the evidence in the record shows that on May 26, 2011, CPG, as FirstBank's asignee, filed a *Verified Complaint*[12] before the Puerto Rico Court of First Instance seeking collection of monies and foreclosure of collateral and guarantees from SCI and the McCloskeys themselves, among others.  See Lead Case Docket No. 11-1.  The court finds that is sufficient notice of default and that, therefore, the Defendants' debts with SCI are due and payable.

Conclusion

In view of the foregoing, the Court grants Plaintiff's *Motion for Summary Judgment* in the principal amount of $2,442,967.00 plus interests at 12% *per annum* from September 30, 2011.

Judgment will be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of April, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

[12] ¶ 92 of CPG's *Verified Complaint* states that "on or about May 3, 2011, [it] sent a formal notice of default ... pursuant to which the Debtors and Guarantors of the existing defaults, accelerated the amounts due under the Loans and requested payment therein" and that such notices of default were attached thereto as Exhibits 23A, 23B, 23C, and 23D (Lead Case Docket No. 11-1, p. 24, ¶ 92).  Those Exhibits were not attached to Lead Case Docket No. 11-1.

15